

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
SEP 25 2014
ARTHUR JOHNSTON
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**OF THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CHRISTOPHER G. LINDSEY**                                    **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO.** 3:14cv752
CWR-
LRA

**GEO GROUP, INC., MANAGEMENT & TRAINING**
**CORPORATION and JOHN AND JANE**
**DOES 1-100**                                    **DEFENDANTS**

## COMPLAINT FOR DAMAGES

### *Jury Trial Demanded*

1.      This complaint is brought by Christopher G. Lindsey (hereinafter, "Plaintiff"), by and through undersigned counsel, against GEO Group, Inc., Management & Training Corporation and John and Jane Does 1-100.

## JURISDICTION AND VENUE

2.      Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. § 1983 as well as the 8th and 14th Amendments to the United States Constitution.  The Court also has pendent jurisdiction over the Plaintiff's state causes of action.

3.      Venue is appropriate in this Court as all acts and/or omissions occurred in Meridian, Lauderdale County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

4.      A Certificate of Expert Consultation is attached hereto and incorporated herein as Exhibit "A" pursuant to Miss. Code Ann. § 11-1-58.

## PARTIES

5.      Plaintiff is an adult resident citizen of Rankin County, Mississippi; his current residence address is 147 McCoy Drive, Brandon, Rankin County, Mississippi, 39047.  Plaintiff was, at all times material to this Complaint, incarcerated at East Mississippi Correctional Facility

(hereinafter, "EMCF"), located in Lauderdale County, Mississippi, wherein substantial acts, omissions and events that caused Plaintiff's injuries took place. EMCF is a prison for low, medium and high security inmates, as well as "special needs" inmates, or those with varying mental health issues. Plaintiff is also party to a pending class action lawsuit in re: *Jermaine Dockery, et al. v. Christopher Epps, et al.;* In the United States District Court for the Southern District of Mississippi; Jackson Division; Civil Action No. 3:13cv326 TSL-JMR, filed May 30, 2013.

6.      Defendant, GEO Group, Inc. (hereinafter, "GEO"), a national for-profit prison operator incorporated and existing in the State of Florida, initially managed EMCF during the time period wherein the acts, omissions and events giving rise to Plaintiff's complaint took place. GEO was paid by the Mississippi Department of Corrections (hereinafter, "MDOC") to manage the daily operations of the facility until April, 2012, when its contract was cancelled; Management & Training Corporation of Centerville, Utah, took over facility operations on or about July 19, 2012. Under its contract with MDOC, GEO had the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. GEO's principal place of business is located at 621 NW 53rd Street, Suite 700, Boca Raton, Florida 33487, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, Corporate Creations Network, located at 232 Market Street, Flowood, Mississippi 39232.

7.      Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, has managed EMCF since being awarded a ten (10) year contract by MDOC in July, 2012, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee Corrections division operates 24 correctional facilities

throughout the United States, having seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. Since MTC's taking over control of EMCF's daily operations from GEO, the acts, omissions and events giving rise to Plaintiff's complaint continued under its new management. MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

8.      The Plaintiff is ignorant as to the identities of John and Jane Does 1-100 who are unknown EMCF/GEO and MTC officers, employees, agents, and or servants. Plaintiffs will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of each of the other Defendants herein, and were acting with the permission and consent within the course and scope of said agency and employment.

## FACTS

9.      Plaintiff was diagnosed with pediatric glaucoma in August, 1992, at the age of six (6). He underwent several ocular surgical procedures and thereafter continued with a routine course of maintenance eye care over the next few years in an effort to repair, improve and prevent damage. Unfortunately, in 2009, at the age of 23, Plaintiff was sentenced to serve five (5) years in MDOC custody for a statutory rape conviction out of Rankin County, Mississippi, and began serving his sentence at EMCF on August 10, 2009, with his tentative release date set for July 20, 2013.

3

10.     Despite his arrival at EMCF with an extremely well-documented clinical and surgical history of extensive, unusual and complicated eye problems, GEO and MTC failed to obtain proper guidance from ophthalmic specialists- both inside and outside the facility- as to the proper course of treatment and maintenance care required by a patient with such serious ocular issues as the Plaintiff. GEO and MTC should have, at a minimum, obtained his prior medical and surgical eye records, whereby it would have been determined that he had other ophthalmic disorders necessitating serious attention, care and treatment in the interest of preventing him from eventually going completely blind.  This they did not do.

11.     Throughout the available MDOC medical records reviewed, all of which span the duration of Plaintiff's incarceration at EMCF, despite the type symptom, illness or issue referenced as being attended to, "GLAUCOMA (ICD365.9)", which means "unspecified glaucoma" according to the International Statistical Classification of Diseases and Related Health Problems: ICD-9 coding references, was listed as one of his current problems.  GEO and MTC failed to determine if this "unspecified glaucoma" was still present at any time, thereby leaving it untreated, directly causing further ocular damage.

12.     GEO and MTC failed to ascertain what specific course of management his ocular diseases required, whether due to an insufficiency of staff skilled in ophthalmic matters, or a lack of ophthalmic equipment at the facility (in existence or operable/functioning). GEO and MTC thereby had the obligation, due to these insufficiencies, to obtain outside ophthalmic professional assessments and care, and coordinate an appropriate treatment plan in conjunction therewith. However, Plaintiff's medical records indicate that only once during the entire duration of his incarceration at EMCF was Plaintiff provided an outside ophthalmic assessment, which was conducted at Meridian Opthalmic Associates, located in Meridian, Mississippi, on February 2, 2012- two and a half years after his arrival at EMCF.  As a result of his assessment, Dr. Jonathan

4

Moore determined that Plaintiff's glaucoma was severe and inadequately treated, with his intraocular pressure extremely elevated.  Furthermore, he recommended Plaintiff be evaluated by a glaucoma specialist due to the extent of the damage, prescribed three (3) medications and requested a follow up examination be conducted approximately two to three weeks later.  An appointment was scheduled for February 21, 2012- yet Plaintiff's record with Meridian Opthalmic Associates indicates that Plaintiff was a "no show" to the appointment, nor was it rescheduled.

13.     As a result of his disability, Plaintiff became known as an easy target.  In July, 2012 he was robbed.  He was robbed again in January, 2013, and in April, 2013 his radio, one of the few amenities he had remaining that he could actually enjoy, was also stolen.  Furthermore, it became increasingly difficult for Plaintiff to navigate the prison or perform daily activities on his own.  At one point prior to his discharge, he was assigned an inmate caretaker to assist him.

14.     Plaintiff did not have another ophthalmic assessment until after his release from EMCF.  On October 22, 2013, Plaintiff returned to the ophthalmologist he had seen prior to his incarceration, Dr. Robert A. Mallette of Jackson Eye Associates, located in Jackson, Mississippi. During this appointment Dr. Mallette found that Plaintiff had suffered extensive additional ocular glaucoma damage, with an extreme level of visual loss in what had been his better-sighted right eye due to inadequately controlled eye pressures.  Subsequently, he was diagnosed with uncontrolled glaucoma and underwent a surgical procedure (Baerveldt Tube Shunt) performed by Dr. Younghyun Oh of Jackson Eye Associates on November 20, 2013 in another attempt to manage Plaintiff's intraocular eye pressures and retain what visual acuity possible. Unfortunately, the surgery was not as successful as hoped, as while his intraocular pressures were reduced to remain within normal limits, his visual acuity continued to deteriorate, with vision in the right eye reduced to an extremely limited (almost non-existent) level, and that of the

left to mere light perception alone, i.e. almost complete blindness.

## 1983 CAUSES OF ACTION – DENIAL OF MEDICAL CARE

### Dangerously Inadequate Medical Care: A Deliberate Choice to Ignore Warnings

15.     Medical care at EMCF is provided by for-profit contractors and has long been so grossly substandard as to place prisoners at grave risk of loss of limbs and of death.  Defendants fail to take responsibility for providing adequate medical care to the prisoners in their custody, for overseeing the care provided by the private contractors, or for holding those contractors accountable.

16.     Correctional health expert Madeleine LaMarre visited EMCF in January, 2011 to evaluate medical care pursuant to the Order of Dismissal in *Presley v. Epps*.  At the time, medical care was provided by GEO.  In nearly every aspect of care assessed, she found gross deficiencies.  Ms. LaMarre found care by the on-site physician to be so poor that she recommended that he be "immediately removed from the facility and replaced…"

17.     Ms. LaMarre also found inadequate levels of staffing as well as major deficiencies in medical record keeping.

18.     In her report she wrote, "I found that at each step of the process, access to care services was not timely or adequate."  For example, she observed:

> In a review of 33 health care requests in ten health records, we found that the average length of time foe a nurse to see a patient once the HSR was received was 7.5 days.  In 10 (30%) of 33 HSR's reviewed a nurse did not see the patient at all.

19.     Ms. LaMarre's report was submitted directly to MDOC.  MDCO did not respond to the deficiencies she identified or to her detailed recommendations.  Instead, Defendants had GEO respond.  GEO was specifically placed on notice of their medical inadequacies and failed to remedy them.

**Patients at EMCF Lack Access to Necessary Medical Care**

20.     The problems identified by Ms. LaMarre in 2011 persisted at EMCF, despite transitioning to a new for-profit vendor, Health Assurance, in 2012.

21.     As was documented in Ms. LaMarre's report, patients still submit request after request for health care services without receiving any response or being seen. As of May, 2013 staff were telling prisoners in Unit 6 that they could not submit sick call requests because no forms were available. The facility remains understaffed and most patients are seen by nurses, regardless of the seriousness of their condition. Medical records show that patients with serious health needs go for long periods of time without seeing a doctor.

22.     Further hindering access to care is MDOC's "co-payment" policy. MDOC charges patients $6.00 for each request they submit for medical, dental, or mental health care. Prisoners report that this fee is charged at the time that the request is submitted, regardless of whether they ever get to see a clinician. If a prisoner must submit three (3) requests before being seen for a serious medical problem, he will be charged $18.00. This policy deters prisoners from seeking care, including mental health care, and places them at a substantial risk of serious harm.

**Lack of Access to Critical Medications**

23.     During the lockdowns of 2012, patients went for days or longer without receiving critical medications. Patients reported that, at times, nurses would roll their pills under their cell doors for them to take. Upon information and belief, when GEO ceased operations at EMCF, the company removed its entire stock of medications from the facility. Defendants made no arrangements to ensure medication continuity during the transition. Even during a multi-week lockdown in April, 2013, staff told prisoners in Unit 6 that they would not receive their evening medications on a particular day due to the lockdown.

24.     Contrary to accepted nursing practice, nurses do not contemporaneously document medication administration on Medication Administration Records (MAR's).  As a result, there is no reliable means of determining whether a patient is adhering to his medication regimen, or whether he is receiving his medications at all.  It also allows health care staff to deny prisoner's claims that they are not receiving medications.  At times, nurses refuse to administer medications in some of the solitary confinement zones when they are in a state of disarray.

### Failure to Care for Serious Medical Needs: Eye Care

25.     Prisoners do not receive proper eye care.  When one prisoner reported that his vision was very bad and that he needed to be seen, he was told that he had been "placed on the list to see the eye doctor" but that the list was "lengthy."  When he was ultimately seen, the patient reported that the eye doctor diagnosed him with a cataract and that corrective surgery was needed.  However, his surgery was denied.  The following month, he submitted a request, stating, "I have had someone else write this request because I have cataracts so bad I can't see well enough to write it."

26.     Plaintiff herein has a history of serious mental illness, and as stated hereinabove, he was diagnosed with glaucoma at the age of nine (9); at one point, he had eye surgery to relieve the pressure building in his eyes.  Afterward, he was forced to use multiple eye drops each day and see a glaucoma specialist every six (6) months in order to prevent his going blind.  Despite this, upon his arrival at EMCF in 2009, his vision was considered to be good; however, during the summer of 2011, his vision began to deteriorate- he began to lose his peripheral vision and color perception and his field of vision began to darken.  He was not taken to see the glaucoma specialist despite submitting multiple sick call requests, and in the fall of 2011, Defendants began instituting a series of institution-wide lockdowns that lasted for weeks, or longer.  During this period, Plaintiff stopped receiving the eye drops necessary to prevent him

from going blind, and was advised by staff that he would not be taken offsite to see a glaucoma specialist due to the lockdowns.

Upon information and belief, there was no provision for medication continuity during the aforementioned transition from GEO to Health Assurance that prisoners went without critical medications for weeks or more. Plaintiff was no exception, and from July, 2012 to November, 2012, he received no eye drops whatsoever. In late 2012, Plaintiff began receiving his eye drops again, but on an intermittent basis only. In February, 2013, Plaintiff advised medical staff three (3) weeks in advance that he was running out of eye drops; on February 25, 2013, he was told that more drops were being ordered. As of March 12, 2013, he had completely run out of drops. As of mid-May, 2013, he was receiving only one (1) of the three (3) eye drops prescribed for him., which continued until his discharge- at which time Plaintiff was legally blind in both eyes.

27.     Defendants are fully aware of the conditions of confinement at EMCF and the grave risks posed to prisoners' health and safety. In 2003, a federal court condemned the broken plumbing and "ping-pong toilets" on the death row in Parchman, stating, "No one in a civilized society should be forced to live under conditions that force exposure to another person's bodily wastes. No matter how heinous the crime committee, there is no excuse for such living conditions."[1] Ten years later, prisoners in Units 5 and 6 at EMCF live in similarly foul and toxic conditions. In 2011, two of the nation's top correctional health experts identified dangerously inadequate medical and mental health care at EMCF and three (3) other MDOC facilities, including EMCF. The resulting reports, findings, and recommendations were submitted to Defendants and filed with a federal court but were largely ignored.[2]

---

[1]     *Russell v. Johnson*, No. 1:02CV261-JAD, 2003 WL 22208029, at *3 (N.D. Miss. May 21, 2003).
[2]     The reports of the experts were filed with the Court as Doc. No. 151 in *Presley v. Epps,* No. 4:05-CV-00148 (N.D. Miss.). The experts' reports on conditions at EMCF are Doc. Nos. 151-7 and 151-8.

28.     GEO and MTC's policy of inadequate medical care as detailed above directly caused the Plaintiff's eye injury.  GEO also had a policy of failing to hire qualified medical care providers, failing to train these providers and failing to supervise the medical care which was given to the prisoners including the Plaintiff. Due to these unconstitutional policies and procedures, GEO and MTC's employees and agents failed to diagnose and treat the Plaintiff's established, poor ocular condition and in doing so, violated clearly established constitutional rights, including but not limited to:

a)      Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b)      Plaintiff's right not to be deprived of liberty without due process of law;

c)      Plaintiff's right to be safe and protected from injuries while in Defendants' custody; and

d)      Plaintiff's right to necessary medical treatment for his serious medical treatment.

29.     By their policies and practices described herein, Defendants subjected Plaintiff and other EMCF inmates to a substantial risk of serious harm and injury from inadequate medical care, i.e. optical care and other health-related services.  These policies and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of the Plaintiff's deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

30.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

31.     As a direct and foreseeable result of Defendants' actions, Plaintiff suffered damage including but not limited to, permanent, debilitating physical injuries, emotional distress, mental anguish, as well as pain and suffering.

## NEGLIGENCE/GROSS NEGLIGENCE

32.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 31 hereinabove.

33.     At all times relevant herein, each Defendant had a duty to exercise ordinary care for the prisoners at EMCF, including the Plaintiff. Each Defendant breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid and prevent injury to others, i.e. in the case *sub judice*, to provide the appropriate, reasonable and necessary medical care to accomplish same- the failure of which led directly to the incontrovertible permanent damage sustained by the Plaintiff. This breach was so egregious as to amount to gross negligence.

34.     Plaintiff's injuries, and his permanent ocular damages, were the reasonably foreseeable outcome of Defendants' acts and omissions. These acts and/or omissions were substantial factors in bringing about Plaintiff's injuries, and, therefore, the accompanying damages sustained.

## NEGLIGENT HIRING AND SUPERVISION

35.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 34 hereinabove.

36.     Plaintiff alleges Defendants GEO, MTC and Doe Defendants 1-100 negligently hired, supervised, and retained its employees and agents, inter alia, by a) failing to properly care for and ensure the Plaintiff's health, safety and well-being while at EMCF; b) properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives; and c) were otherwise negligent in their care and treatment of the Plaintiff, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

**RESPONDEAT SUPERIOR**

37.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 36 hereinabove.

38.     Defendants GEO, MTC and other unknown EMCF correctional officers and agents (Does 1-100) acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent the Plaintiff's injuries.  At all times relevant, each Defendant owed a duty to the Plaintiff to ensure his health, safety and well-being, and the Defendants breached this duty. The actions and inactions of Defendant GEO, MTC and/or other EMCF personnel led directly to the injuries suffered by the Plaintiff.  GEO and MTC, as Defendant John and Jane Does 1-100's employers, are liable for their actions which were undertaken during the course and scope of their employment with GEO and MTC.

39.     GEO and MTC are also responsible for the actions and inactions alleged herein against Defendants GEO, MTC and John and Jane Does 1-100 which caused the damages suffered by the Plaintiff.  Also such actions and/or inactions by the individual Defendants were committed within the course and scope of their employment with GEO and MTC.

**PUNITIVE DAMAGES**

40.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 39 hereinabove.

41.     The Defendants have acted in complete disregard for the health, safety and well-being of the Plaintiff by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

42.     The Defendants' actions exhibited gross negligence and direct disregard of the health, safety and well-being of the Plaintiff.  Punitive damages should be awarded against the

Defendants. Defendants' tortious actions have caused the Plaintiff permanent, debilitating bodily injuries, emotional distress, mental anguish and pain and suffering.

## PRAYER FOR RELIEF

The Plaintiff requests a jury trial and seeks the following relief:

A.      Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

B.      Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

C.      Reasonable attorney's fees and all costs of this court;

D.      Pre and post judgment interest; and

E.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 25th day of September, 2014.

CHRISTOPHER G. LINDSEY, PLAINTIFF

BY: _____
CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
*Attorneys for Plaintiff*